IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  10-cv-00649-CMA-MJW

DANIEL JOYCE and
ROBERT LOPEZ,

Plaintiffs,

v.

NORTH METRO TASK FORCE,
THE CITY OF NORTHGLENN, COLORADO,
THE CITY OF THORNTON, COLORADO,
JAMES NURSEY,
RUSSELL VAN HOUTEN,
JACK BELL,
DANTE CARBONE,
TIMOTHY HERSEE, and
RICHARD REIGENBORN,

Defendants.

---

**ORDER REGARDING
PLAINTIFFS' MOTION FOR ORDER COMPELLING PRODUCTION OF
SUBPOENAED DOCUMENTS AND TESTIMONY (DOCKET NO. 37)**

---

**Entered by Magistrate Judge Michael J. Watanabe**

This matter is before the court on Plaintiffs' Motion for Order Compelling

Production of Subpoenaed Documents and Testimony (docket no. 37).  The court has

reviewed the subject motion (docket no. 37), the response (docket no. 52), and the reply

(docket no. 60).  In addition, this court has reviewed, *in camera*, the tape recordings [in

the form of a CD] of the Executive Sessions related to the *Oak Chin* investigation, the

leak in the *Oak Chin* investigation, and the investigation into that leak per this court's

Order Allowing Limited Wavier of Privilege and for an *In Camera*, Review (docket no.

2

50).  Further, the court has taken judicial notice of the court file and has considered

applicable Federal Rules of Civil Procedure and case law.  The court now being fully

informed makes the following findings of fact, conclusions of law, and Order.

In this case, Plaintiffs are claiming that Defendants retaliated against them for

their speech, in violation of the First Amendment, thus entitling them to damages under

42 U.S.C. § 1983.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The court finds:

1.      That I have jurisdiction over the subject matter and over the parties

to this lawsuit;

2.      That venue is proper in the state and District of Colorado;

3.      That each party has been given a fair and adequate opportunity to

be heard;

4.      That on February 23, 2011, the parties filed a Stipulated Motion for

Limited Waiver of Privilege and for an *In Camera* Review (docket

no. 39);

5.      That on March 1, 2011, I granted the Stipulated Motion for Limited

Waiver of Privilege and for an *In Camera* Review (docket no. 39).

See docket no. 50;

6.      That Plaintiffs have requested in the subject motion (docket no. 37)

production from the North Metro Task Force ("Task Force") of

information regarding conversations on certain subjects which took

place in Executive Session.  The Task Force has objected to

3

production of those conversations under several privileges.

Nevertheless, the Task Force entered into the above Stipulated

Motion (docket no. 39) and has agreed to a limited waiver of the

Executive Session Privilege and other associated privileges, but not

the attorney-client privilege;

7. That the tape recordings [i.e., CD] of the Executive Sessions are

very lengthy, and this court has now reviewed, *in camera*, the CD in

light of each party's proffer as to relevancy of such tape recordings

of the Executive Sessions.  See Plaintiffs' Position Statement

Regarding *In Camera* Review (docket no. 96) and NMTF [Task

Forces'] Statement of General Position Regarding *In Camera*

Review (docket no. 55);

8. Plaintiffs argue that the tape recordings of the Executive Sessions

regarding the *Oak Chin* investigation are not protected by the state

Executive Session Privilege, are discoverable, and are relevant as

follows:

a. That the minutes may show the Board's opposition to

Plaintiffs' speech, an element in proving retaliation;

b. That the minutes may be relevant to Plaintiffs' contention

that the Board was attempting to sweep the *Oak Chin* case

and the leak investigation under the rug, thus having a

reason to silence the Plaintiffs;

c. That the minutes may show that the Board knew of the

4

harassment and retaliation occurring against Plaintiffs but took no action to stop those activities, thus supporting Plaintiffs' theory of municipal liability through deliberate inaction;

d.     That the minutes of the Board's meeting might show the influence of politics on its decisions;

e.     That the minutes might show other efforts to thwart or cover up the *Oak Chin* investigation;

f.     That the minutes might show certain foot-dragging on the Board's part; and

g.     That the minutes might show anything specific that was said by the Board regarding officers Joyce or Lopez that may be relevant to Plaintiffs' case.   See docket no. 96;

9.     Plaintiffs further argue that the tape recordings of the Executive Sessions regarding the *Oak Chin* investigation are not protected by the state Executive Sessions Privilege, are discoverable, and are relevant to their contentions:

a.     That the Board took a general position that disfavored aggressively pursuing the leak and acted to cover up the misdeed;

b.     That the Board retaliated against Plaintiffs when they spoke out about the investigation into the leak;

c.     That the Board discussed Sgt. Carbone's involvement in the

leak and refused to take any action; and

    d.    That the Board took the position that the NMTF ["Task

Force] should not work with the DEA and retaliated against

Plaintiff Lopez when he spoke out about the decision.  See

January 28, 2011, letter from Plaintiffs' Counsel attached as

Exhibit A to docket no. 55;

10.    That Rule 26(b)(1) of the Federal Rules of Civil Procedure defines

the scope of discovery as follows:

> Unless otherwise limited by court order, the scope of
> discovery is as follows: Parties may obtain discovery
> regarding any nonprivileged matter that is relevant to
> any party's claim or defense–including the existence,
> description, nature, custody, condition, and location of
> any documents or other tangible things and the
> identity and location of persons who know of any
> discoverable matter.  For good cause, the court may
> order discovery of any matter relevant to the subject
> matter involved in the action.  Relevant information
> need not be admissible at the trial if the discovery
> appears reasonably calculated to lead to the
> discovery of admissible evidence.  All discovery is
> subject to the limitations imposed by Rule 26(b)(2)(C).

Fed. R. Civ. P. 26(b)(1).  However, "a party's right to obtain

6

discovery of 'any matter, not privileged, that is relevant to the claim or defense of a party' . . . may be constrained where the court determines that the desired discovery is unreasonable or unduly burdensome given the needs of the case, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Simpson v. University of Colo., 220 F.R.D. 354, 356 (D. Colo. 2004). "The Federal Rules of Civil Procedure permit a court to restrict or preclude discovery when justice requires in order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Id. See Fed. R. Civ. P. 26(b) and (c);

A given topic is relevant if it has "the mere tendency" of making any material fact more or less probable. Fed. Deposit Ins. Corp. v. Wise, 139 F.R.D. 168, 170 (D. Colo. 1991). See Fed. R. Evid. 401;

11. That the parties have cited both federal and state law with respect to the Executive Session Privilege; therefore, I must first determine whether federal or state privilege law applies in this case.

The Executive Session Privilege and the law enforcement privilege are designed to allow confidential conversations and free and open discussion by Board members and to prevent disclosure of law enforcement techniques and procedures, as well as the sources, of

law enforcement personnel and individuals involved in investigation.

See Frankenhauser v. Rizzo, 59 F.R.D. 339, 342 (E.D. Pa. 1973);

In re M & L Bus. Machine Co. v. Bank of Boulder, 161 B.R. 689,

693 (D. Colo. 1993); § 24-6-402(3)(a)(I)-(VIII), C.R.S.;


Typically, in federal courts, federal common law governs the

existence of privilege, unless state law supplies the rule of decision

as to an element of the claim or defense.  Fed. R. Civ. 501.  See

Cutting v. United States, No. 07-02053-REB-MEH, 2008 WL

1775278, at *2 (D. Colo. April 14, 2008).  The Advisory Committee

Notes to Rule 501 provide that in nondiversity cases such as this,

the federal law of privilege applies.  See Fed. R. Evid. 501

Committee Note ("It is also intended that the federal law of privilege

should be applied with respect to pendent [supplemental] state

claims when they arise in a federal question case.").  See also

Hancock v. Hobbs, 967 F.2d 462, 467 (11th Cir. 1992) ("We

therefore hold that the federal law of privilege [applies in a federal

question case], even if the [discovery] is relevant to a pendent

[supplemental] state law count which may be controlled by a

contrary state law of privilege."); Wm. T. Thompson Co. v. General

Nutrition Corp., 671 F.2d 100, 104 (3rd Cir. 1982) (noting that when

privilege issue overlaps with federal and pendent [supplemental]

claims, federal rule in favor of admissibility controls); Bethel v.

8

United States ex rel. Veterans Admin. Med. Center, No. 05-1336-PSF-KLM, 2008 WL 45382, at *6 (D. Colo. Jan. 2, 2008) ("In cases like this one, brought under the Federal Tort Claims Act, federal common law governs the application of privilege.") (citing Beller v. United States, 221 F.R.D. 679, 681 (D.N.M 2003)). Lastly, in United States v. Prouse, 945 F.2d 1017, 1024 (8th Cir. 1991), the Eighth Circuit held that in a federal question case involving a § 1983 claim, existence of pendant state law claims held not to relieve court of obligation to apply federal law of privilege;

12. That in this case, with the above legal principles in mind, I find that the state Executive Session Privilege does not apply. I further find that the federal common law on privilege applies in this case and not state law privilege. Federal law has not recognized a specific privilege for records of executive sessions of State Boards, unless there is another recognized privilege involved, such as the attorney-client privilege. See Sprague v. Thorm Americas, Inc., 129 F.3d 1355, 1369 (10th Cir. 1997). Under federal common law, the attorney-client privilege arises (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently. protected, (7) from disclosure by himself or by the legal advisor, (8) unless the protection is waived. See Williams v. Sprint United

9

Management, Co., No. 03-2200-JWLDJW, 2006 WL 266599, at *2
(D. Kan. Feb. 1, 2006)(unpublished).  The doctrine protects from
discovery communications made in confidence between the client
and attorney, but it does not protect the underlying facts contained
within those communications.  Upjohn Co. v. United States, 449
U.S. 383, 395-96 (1981).  To be covered by the attorney-client
privilege, a communication between a lawyer and client must relate
to legal advice or strategy sought by the client.  See id.  To the
extent that any statements made during the Executive Session
implicate the attorney-client privilege, then such statements are
privileged from disclosure.  In addition, I find that the mere
attendance of an attorney at a Executive Session [meeting] does
not render everything done at said meeting privileged.  Lastly, I find
that Defendants have not articulated, with particularity, a specific
attorney-client privilege argument in either Defendants City of
Thornton, James Nursey and Dante Carbone's Response to
Plaintiffs' Motion for Order Compelling Production of Subpoenaed
Documents and Testimony  (docket no. 52) or in Defendant NMTF
[Task Force] Statement of General Position Regarding In Camera
Review (docket no. 55);

13.    That the court finds that the information contained on the CD which
contains the Executive Session meetings is relevant (see
paragraphs 8 and 9 supra), not privileged, and likely to lead to

admissible evidence;

14.     That as to the Report of the investigation into the leak in the *Oak
        Chin* case, Plaintiffs sought such Report from the United States
        Attorney for the District of Colorado pursuant to 28 C.F.R. § 16.21,
        *et seq.*, and made demands to Assistant United States Attorney
        Mark Pestal along with an Affidavit outlying excerpts from the
        handwritten notes of Plaintiffs' counsel's review of the summary of
        such Report.  See exhibits 1 through 11, attached to the subject
        motion (docket no. 37).  In particular, see exhibits 5-B and 9
        attached to subject motion (docket no. 37).  Exhibit 9 is handwritten
        notes of Chief Darr regarding the summary.  Based upon Plaintiffs'
        counsel's review of Exhibits 5-B and 9, Plaintiffs argue that the
        Report is relevant under Fed. R. Evid. 401 and is discoverable
        under Fed. R. Civ. P. 26(b)(1) and that Plaintiffs have complied with
        the requirements of 28 C.F.R. § 16.21.  In particular, Plaintiffs
        argue that the Report is relevant to their case for the following
        reasons:

        a.      That the Report details the specific speech in which Plaintiffs
                engaged;

        b.      That the Report may show a motive for Defendants'
                retaliation against officers Joyce and Lopez.  The summary
                that an independent investigatory entity focused on a Task
                Force sergeant- then Sergeant Carbone- as a primary

suspect in the leak;

c.  That the Report may indicate that the Board failed to vigorously pursue the investigation into the leak;

d.  That the Report may show that there may well have been substantial political influence exerted in the *Oak Chin* case, providing yet another motive for the Board and other Defendants to silence the Plaintiffs;

e.  That the Report may show that other members of the Task Force were concerned about retribution from the Task Force or their home police agencies for cooperating in the DEA investigation into the leak;

f.  That the Report may also verify Plaintiffs' beliefs that their lives might be in jeopardy if they were required to work with and under a corrupt police sergeant; and

g.  That the Report might shed light on the credibility of Defendants;

15.  That the court finds that the Report is relevant, not privileged, and likely to lead to admissible evidence;

16.  That Plaintiffs have complied with the requirements of 28 C.F.R. § 16.21, *et seq.* See exhibits 1 through 11, attached to the subject motion (docket no. 37). In particular, see exhibits 5-B and 9 attached to subject motion (docket no. 37). Exhibit 9 is handwritten notes of Chief Darr regarding the summary;

12

17.     That according to the summary of the Report, Special Agent Paul

Roach was assigned, along with Special Agent Santavicca, to

investigate the leak in the *Oak Chin* case, and Plaintiffs are

requesting to depose Special Agent Paul Roach since the *Oak Chin*

investigation into the leak was performed by the DEA, the Report of

the investigation was authored by the DEA, and the Report was

presented to the United States Attorney's Office for the District of

Colorado by the DEA.  Accordingly, Plaintiffs contend that there is

no one else who can supply complete and accurate information on

the investigation and resulting Report.  Although it appears that the

Board of the Task Force assigned two officers to help in the

investigation, they were assigned only to provide assistance as

needed.  Therefore, I find that Plaintiffs have established good

cause for deposing Special Agent Paul Roach and that Plaintiffs

should also have access to the Report prior to deposing Special

Agent Roach; and

18.     That a protective order was entered in this case on August 16,

2010 (docket no. 24), and it will protect the concerns of all parties

and non-parties of the requested information in the subject motion.

The protective order will prevent disclosure of any discovery

obtained about the closed Executive Sessions [meetings] except to

the parties to this litigation.  This would serve the purpose of the

state Executive Privilege while allowing the search for the truth

13

which is the underpinning of our system of justice.  A protective

order will protect the privacy interests of any non-party personnel

who may have been discussed during the Executive Sessions

[meetings].  It makes no sense to allow state Executive Privilege

law to determine what evidence is discoverable in cases brought

pursuant to federal statutes whose central purpose is to protect

citizens from abuses of power by governmental authorities.  If state

privilege law controlled, then state authorities could effectively

insulate themselves from constitutional norms simply by developing

privilege doctrines that make it virtually impossible for plaintiffs to

develop the kind of information they need to prosecute their federal

claims.

**ORDER**

**WHEREFORE**, based upon these findings of fact and conclusions of law this

court **ORDERS**:

1.   That Plaintiffs' Motion for Order Compelling Production of

Subpoenaed Documents and Testimony (docket no. 37) is

**GRANTED**;

2.   That a copy of the tape recordings [i.e., CD] of the Executive

Sessions that were reviewed by this court, *in camera*, shall be

provided to Plaintiffs by Defendant North Metro Task Force on or

before May 31, 2011;

3.   That the Clerk of Court shall SEAL the tape recordings [i.e., CD] of

14

the Executive Sessions that were reviewed by this court, *in camera*, and such CD shall not be opened except by further Order of Court;

4.      That Plaintiffs may take the deposition of Special Agent Paul Roach, and the parties are to forthwith meet, confer, and set the deposition of Special Agent Paul Roach consistent with D.C.COLO.LCivR 30.1;

5.      That Plaintiffs shall serve anew their subpoena for deposition and subpoena *duces tecum* regarding the Report on Special Agent Paul Roach consistent with Fed. R. Civ. P. 45 after the parties  meet, confer, and set a new deposition date for Special Agent Paul Roach; and

6.      That each party shall pay their own reasonable expenses for the subject motion (docket no. 37) since I find that under the facts and circumstances surrounding the subject motion an award of reasonable expenses would be unjust.

Done this 18th day of May 2011.

BY THE COURT

s/Michael J. Watanabe
MICHAEL J. WATANABE
U.S. MAGISTRATE JUDGE